UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TERESA E.A. TEATER, | No. 3:05-cv-00604-HU |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| PFIZER, INC., et al., | |
| Defendants. | |

Andrew M. Schpak
Edwin A. Harnden
BARRAN LIEBMAN LLP
601 SW Second Avenue, Suite 2300
Portland, OR 97204-3519

    Attorneys for Plaintiff

Eric J. Neiman
David C. Campbell
WILLIAMS, KASTNER & GIBBS PLLC
888 SW Fifth Avenue, Suite 600
Portland, OR 97204-2025

Mark S. Cheffo
Catherine B. Stevens
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Four Times Square
New York, NY 10036

    Attorneys for Defendants

1 - FINDINGS & RECOMMENDATION

HUBEL, Magistrate Judge:

In this pharmaceutical products liability case, Defendants Pfizer, Inc. ("Pfizer") and Warner-Lambert Company LLC ("Warner-Lambert") (collectively, "Defendants") move for summary judgment on all of Plaintiff Teresa Teater's ("Plaintiff") claims pursuant to Federal Rule of Civil Procedure ("Rule") 56(c), and Plaintiff moves to enlarge the time within which to file expert designations. For the reasons that follow, Plaintiff's motion (ECF No. 99) to enlarge time to file expert designations should be GRANTED and Defendants' motion (ECF No. 84) for summary judgment should be GRANTED.

## Procedural Background

In early May 2005, Plaintiff brought this action pro se to recover damages for alleged personal injuries suffered as a result of her ingestion of Defendants' prescription drug Neurontin. In late October 2005, the Judicial Panel on Multidistrict Litigation issued a conditional transfer order transferring this case from the District of Oregon to the consolidated proceedings in the District of Massachusetts. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 1629 (J.P.M.L. Oct. 24, 2005) (order for conditional transfer). Nearly six years later, on May 6, 2011, the Multidistrict Panel issued a conditional remand which remanded Plaintiff's case to this Court. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 1629 (J.P.M.L. May 6, 2011) (conditional remand order).

On June 21, 2011, the Court appointed pro bono counsel for Plaintiff, and subsequently granted Plaintiff leave to amend her complaint. Defendants moved to dismiss Plaintiff's amended complaint on March 7, 2012, and were partially successful. However,

2 - FINDINGS & RECOMMENDATION

Plaintiff was given another opportunity to amend her complaint and she did so on November 8, 2012. In her second amended complaint, which the parties agree is presently the operative pleading, Plaintiff alleged claims for negligence, breach of warranty, strict liability, fraud, violation of Oregon's Unlawful Trade Practices Act ("UTPA"), OR. REV. STAT. § 646.605, and unjust enrichment.

Plaintiff's counsel filed a motion to terminate their on-going pro bono representation on November 14, 2012, which was the Court imposed deadline for the parties to disclose all expert witnesses. Two days later, Defendants moved for summary judgment, arguing, inter alia, that Plaintiff failed to disclose an expert witness to testify as to causation. On February 5, 2013, the Court convened a telephone hearing on pro bono counsels' motion to withdraw. Defendants' counsel agreed to the Court conducting a sealed ex parte portion of the hearing. Plaintiff's counsel voiced concerns regarding continued representation of Plaintiff. The Court was also advised about a lack of funds to retain or depose experts. Ultimately, the motion to withdraw was denied after Plaintiff and her counsel agreed that a variant of the briefing scheme established in *State v. Balfour*, 311 Or. 434, 814 P.2d 1069 (1991), could be employed at the summary judgment stage of this proceeding.

On February 6, 2013, Plaintiff's counsel obtained the expert discovery that occurred during the consolidated pretrial proceedings before Judge Patti Saris in the District of Massachusetts. Two days later, on February 8, 2013, Plaintiff filed a motion to enlarge time to file expert designations pursuant to Rule 6(b). In accordance with prior representations to the Court, Defendants responded to Plaintiff's motion to enlarge in

3 - FINDINGS & RECOMMENDATION

1 their reply in further support of their motion for summary
2 judgment, which was filed on March 28, 2013.

### Legal Standard

Summary judgment is appropriate "if pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56©.  Summary judgment is not proper if factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.  A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).  Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982).  All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).

4 - FINDINGS & RECOMMENDATION

Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovick v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981). However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). The "mere existence of a scintilla of evidence in support of plaintiff's positions [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

**Discussion**

**I. Plaintiff's Motion (ECF No. 99) to Enlarge Time**

Pursuant to Rule 6(b), Plaintiff moves the Court for an order enlarging the time for filing expert designations. Defendants oppose the request on the grounds that "Plaintiff failed to designate any experts on or before [the Court imposed] deadline, and instead, Plaintiff's counsel filed a motion to withdraw on November 14, 2012," not a motion for an extension of time. (Defs.' Reply at 3.) Thus, in Defendants' view, "Plaintiff's failure to meet her [November 14, 2012] expert deadline or timely seek an extension should not be excused, and thus, summary judgment is warranted." (*Id.*)

Under Rule 6(b)(1)(B), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." FED. R. CIV. P.

5 - FINDINGS & RECOMMENDATION

6(b)(1)(B). In *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253 (9th Cir. 2010), the Ninth Circuit recognized that Rule 6(b)(1), "like all the Federal Rules of Civil Procedure, is to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." *Id.* at 1258-59 (citation, internal quotation marks, and alterations omitted). While litigants will normally be granted an enlargement of time in the absence of bad faith or prejudice to the adverse party, "[e]ven when the extension is sought after the time limit has expired, the good cause standard is satisfied merely upon a showing of excusable neglect." *Cal. Trout v. F.E.R.C.*, 572 F.3d 1003, 1027 n.1 (9th Cir. 2009).

In *Pioneer Inv. Serv. Co. v. Brunswick Assocs.*, 507 U.S. 380 (1993), the Supreme Court stated: "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect, it is clear that excusable neglect under Rule 6(b) is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392 (internal quotation marks omitted). In determining whether neglect is excusable, courts consider four factors: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2000).

As an initial matter, it makes little sense to refer to any action taken by Plaintiff's counsel in this proceeding as "excusable neglect." Indeed, pro bono counsel undertook near-Herculean efforts to provide Plaintiff with excellent

6 - FINDINGS & RECOMMENDATION

representation: they took on a case outside of their normal practice area, spent over 500 hours of attorney time on this litigation, were amenable to the Court's somewhat unprecedented suggestion that they submit a variant of a *Balfour* brief in opposition to Defendants' motion for summary judgment, and flew to Nebraska to conduct a deposition. Despite encouragement from the Court to submit a motion for reimbursement of out-of-pocket expenses based on their pro bono service in this proceeding, Plaintiff's counsel has not made any such request.

     In terms of the merits of Plaintiff's motion to enlarge time, Defendants argue that, even if the Court excuses Plaintiff's failure to timely designate expert testimony, she still cannot create a genuine issue of material fact with respect to specific causation. This is essentially Defendants' sole basis for arguing that they are entitled to summary judgment on all claims. Considering the apparent strength of Defendants' motion for summary judgment on its merits, and the fact that Plaintiff's counsel is attempting to introduce expert discovery through depositions that occurred during the consolidated pretrial proceedings before Judge Saris (which should come as no shock to Defendants), the Court can foresee little, if any, prejudice or negative impact on this proceeding. *Cf. Perez-Denison v. Kaiser Found. Health Plan of the Nw.*, 868 F. Supp. 2d 1065, 1079 (D. Or. 2012) (making similar observations in granting motion to enlarge time under Rule 6(b)). Moreover, it can hardly be questioned that Plaintiff's counsel has acted in good faith. Accordingly, Plaintiff's motion to enlarge time to file expert designations should be granted, and the Court

7 - FINDINGS & RECOMMENDATION

should consider testimony from Plaintiff's experts in addressing the merits of Defendants' motion for summary judgement.

## II.  Defendants' Motion (ECF No. 84) for Summary Judgment

According to Defendants, the principal issue here is whether Plaintiff has put forth sufficient evidence of specific causation to carry her ultimate burden of proof at trial on her claims for strict liability, negligence, breach of warranty, fraud, violation of the UTPA, and unjust enrichment.

**A. Plaintiff's Evidence.**  In her opposition to Defendants' motion for summary judgment, Plaintiff relies, almost exclusively, on expert testimony that occurred during the consolidated proceedings in the District of Massachusetts. For example, Michael Trimble ("Trimble"), M.D., was deposed on August 4, 2011, and provided the following testimony:

> Q. Alright, sir. Then, after your study, did you form any opinions relative to Neurontin, and its effect on mood and behavior in patients who take Neurontin?
>
> A. Yes.
>
> Q. What is your general opinion?
>
> A. Neurontin is an agent that, because of its action on neurotransmitters -- those are the chemicals in the central nervous system -- in vulnerable people, will lead to changes of mood and behavior; and will lead, in certain cases to suicidal intentions, and suicidal acts, and completed suicides.

(Trimble Dep. 49:14-50:3, Aug. 4, 2011.)  Similarly, during her deposition in mid-August 2011, Cheryl Blume ("Blume"), M.D., testified that available data regarding use of Neurontin suggested a potential for self-harm and suicide-related events:

> Q.  Did you see any signals?

8 - FINDINGS & RECOMMENDATION

| | | |
|---|---|---|
| 1 | A. | Well, I was asked, agin, to specifically look at signals that might reflect a personality characteristic that could lead to self harm as well as the various self-harm terms, yes. And the report is kind of repetitive in the various time frames, but I believe that there were signals evidenced after approval that would have suggested that there was a potential for self harm, suicide-related events. |
| 6 | | . . . . |
| 7 | Q. | Did you form any opinions with respect to whether the labeling or warnings contained in the Neurontin labels were adequate to inform doctors of the signals about which you were studying? |
| 10 | | . . . . |
| 11 | [A.] | Yes, I did form an opinion. |
| 12 | Q. | What opinions did you form? |
| 13 | [A.] | . . . I believe that . . . events occurred that made the . . . launch label obsolete and -- with respect to self-injurious events . . . [the] labeling needed to be modified over time to reflect the database -- reflect the knowledge of the company that there had been reported attempts or completed suicides in patients who were taking the product during the post-marketing periods. |

(Blume Dep. 58:11-20, Aug. 18, 2011.) Lastly, on October 19, 2011, David Franklin ("Franklin"), Ph.D., provided testimony regarding his experience working for Defendants and promoting off label use of Neurontin to physicians:

| | | |
|---|---|---|
| 21 | Q. | Tell us about that, please. |
| 22 | A. | I recorded a couple of . . . [group] voice mails. |
| 23 | Q. | And why did you do that? |
| 24 | A. | I was concerned . . . that the aggressiveness of the [group] voice mails were going to get us all in trouble. |
| 26 | Q. | In what way were they going to get you in trouble? |
| 27 | A. | That they were documenting and being very blatant about our promotion efforts . . . . |

9 - FINDINGS & RECOMMENDATION

1  Q.   Promotion efforts in what regard?
2  A.   Off label.
3  Q.   Of what drug.
4  A.   Neurontin.
5 (Franklin Dep. 65:20-66:9, Oct. 19, 2011.)

**B. Strict Liability.** Plaintiff alleges a strict liability claim against Defendants based on their "fail[ure] to warn" her prescribing physician "about the potential adverse effects associated with Neurontin." (Second Am. Compl. ¶ 35.) As Judge Aiken explained in *Crosswhite v. Jumpking, Inc.*, 411 F. Supp. 2d 1228 (D. Or. 2006), "[i]n addition to presenting proof as to the condition of the defendant's product, the plaintiff in a strict liability case is required to establish that such condition proximately caused his injuries or damages." *Id.* at 1235 (quoting *Gilmour v. Norris Paint & Varnish Co., Inc.*, 52 Or. App. 179, 184 (1981)). When, as here, "the element of causation involves a complex medical question, as a matter of law, no rational juror can find that a plaintiff has established causation unless the plaintiff has presented *expert testimony* that there is a reasonable medical probability that the [actions complained of] *caused the plaintiff's injuries*." *Bixby v. KBR, Inc.*, No. 3:09-CV-632-PK, 2012 WL 3779097, at *8 (D. Or. Aug. 31, 2012) (quoting *Baughman v. Pina*, 200 Or. App. 15, 18 (2005) (emphasis added).

In this case, Plaintiff has not presented any expert testimony indicating that there is a reasonable medical probability that Defendants' actions caused *her* injuries. Indeed, Plaintiff's own prescribing healthcare providers seem to think otherwise. (Dingman Dep. 112:9-13, Nov. 5, 2012) ("Q. Do you recall any patient that

10 - FINDINGS & RECOMMENDATION

you believed became suicidal as a result of using Neurontin? A. I had no experience with that, no. That didn't happen."); (Coler Dep. 128:3-5, Nov. 4, 2012) ("A. Well, they're saying that if you give somebody Neurontin, you're going to have an increased risk of suicide. I don't really think that's true.") Plaintiff attempts to argue that her own deposition "testimony indicates that Neurontin caused [her] to attempt to commit suicide." (Pl.'s Opp'n at 7.) However, Plaintiff overlooks the fact that the *Baughman* rule prevents "jurors from speculating about causation in cases where that determination requires medical expertise beyond the knowledge and experience of an ordinary lay person." *Bixby*, 2012 WL 3779097, at *8. Accordingly, Defendants are entitled to summary judgment on Plaintiff's strict liability claim.

**C. Plaintiff's Remaining Claims**. Plaintiff also brings claims against Defendants for fraud, negligence, and violation of the UTPA — all of which require Plaintiff to demonstrate damages caused by Defendants' conduct — be it fraud, negligence, or a violation of the UTPA. *See Murphy v. Allstate Ins. Co.*, 251 Or. App. 316, 321 (2012) (in order to recover on a claim for fraud, the plaintiff must prove causation); *Watson v. Meltzer*, 247 Or. App. 558, 565 (2011) (negligence action requires the plaintiff to "establish that *but for* the negligence of the defendant, the plaintiff would not have suffered the harm that is the subject of the claim."); *Schmelzer v. Wells Fargo Home Mortg.*, No. CV-10-1445-HZ, 2011 WL 5873058, at *13 (D. Or. Nov. 21, 2011) ("to prevail on UTPA claim, plaintiff must show a violation of the UTPA, causation, and damage in the form of an ascertainable loss"). The same can be said about Plaintiff's breach of warranty claim, which is properly considered

11 - FINDINGS & RECOMMENDATION

a products liability claim under Oregon Revised Statute ("ORS") 30.900.[1] *Cf. Phelps v. Wyeth, Inc.*, 857 F. Supp. 2d 1114, 1123 (D. Or. 2012) (determining that the plaintiff's breach of warranty was properly considered a products liability claim based on the definition of a product liability civil action under ORS 30.900); *see McDowell v. Allied Bldg. Prods. Corp.*, 235 Or. App. 12, 22 (2010) (determining that it was appropriate for the trial court to assess the admissibility of the "plaintiff's proof of causation" in a "complex product[s] liability case"). Again, because the element of causation presents a complex medical question, and because Plaintiff has failed to present sufficient evidence on this point, Defendants are entitled to summary judgment on Plaintiff's claims for fraud, negligence, violation of the UTPA, and breach of warranty.

Lastly, Plaintiff brings a claim for unjust enrichment against Defendants. In *Tupper v. Roan*, 349 Or. 211 (2010), the Oregon Supreme Court explained that their "unjust enrichment cases speak of a range of circumstances that could [satisfy the element of wrongfulness that a claim for unjust enrichment requires], including mistake, *fraud*, coercion, undue influence, duress, taking advantage of weakness, and *violation of a duty* imposed by a confidential or fiduciary relationship." *Id.* at 223 (emphasis added). A review of Plaintiff's second amended complaint suggests

---

[1] ORS 30.900 provides that: "[A] 'product liability civil action' means a civil action brought against a manufacturer, distributor, seller or lesser of a product for damages for personal injury . . . arising out of: (1) [a]ny design, inspection, testing, manufacturing or other defect in a product; (2) [a]ny failure to warn regarding a product; or (3) [a]ny failure to properly instruct in the use of a product." OR. REV. STAT. § 30.900.

12 - FINDINGS & RECOMMENDATION

that her unjust enrichment claim is most likely based on her claims for fraud and negligence. Since both of those claims fail on this record because of the lack of evidence of specific causation, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's unjust enrichment claim as well because no reasonable juror could conclude the element of wrongfulness has been established on this record.

## Conclusion

For the reasons stated, Plaintiff's motion (ECF No. 99) to enlarge time to file expert designations should be GRANTED and Defendants' motion (ECF No. 84) for summary judgment should be GRANTED.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **June 3, 2013.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **June 20, 2013.** When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 13th day of May, 2013.

/s/ Dennis J. Hubel

_____

Dennis J. Hubel
United States Magistrate Judge

13 - FINDINGS & RECOMMENDATION