UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TERESA E.A. TEATER, | No. 3:05-cv-00604-HU |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| PFIZER, INC., et al., | |
| Defendants. | |

Teresa E.A. Teater
5325 N. 107th Plaza, Apt. 105
Omaha, NE 68134
Telephone: (402) 880-5870

    Pro Se Plaintiff

Eric J. Neiman
David C. Campbell
WILLIAMS, KASTNER & GIBBS PLLC
888 SW Fifth Avenue, Suite 600
Portland, OR 97204-2025
Telephone: (503) 228-7967

Mark S. Cheffo
Catherine B. Stevens
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000

    Attorneys for Defendants

1 - FINDINGS & RECOMMENDATION

HUBEL, Magistrate Judge:

    Presently before the Court is a cost bill filed by Defendants Pfizer, Inc. ("Pfizer") and Warner-Lambert Company LLC ("Warner-Lambert") (collectively, "Defendants"). Defendants seek to recover a total of $7,206.04 in costs from Plaintiff Teresa Teater ("Plaintiff"). Alternatively, Defendants ask the Court to declare Plaintiff a vexatious litigant and enter an order enjoining her from filing any further lawsuits without first obtaining permission from the Court.

    Plaintiff objects to the imposition of any costs based on her financial status and inability to pay. Plaintiff represents to the Court that, during the course of this litigation, she has been living off of Social Security benefits and food stamps. These benefits total approximately $1,249 per month and are used to cover Plaintiff's necessary living expenses, such as food, rent ($565 a month), utilities (electricity and gas), insurance (car and renter's), and medical costs. In the event the Court awards costs to Defendants, Plaintiff proposes a payment schedule of $25 per month based on her economic circumstances.

    For the reasons that follow, I recommend the Court deny Defendants' cost bill.

## I. FACTS AND PROCEDURAL HISTORY

    On May 3, 2005, Plaintiff brought this action pro se to recover damages for alleged personal injuries suffered as a result of her ingestion of Defendants' prescription drug Neurontin. On October 19, 2005, the Judicial Panel on Multidistrict Litigation signed a conditional transfer order transferring this case from the District of Oregon to the consolidated proceedings in the District

2 - FINDINGS & RECOMMENDATION

of Massachusetts. Nearly six years later, on May 6, 2011, the Multidistrict Panel issued a conditional remand which remanded Plaintiff's case to this Court.

On June 21, 2011, the Court appointed pro bono counsel for Plaintiff and subsequently granted Plaintiff leave to amend her complaint. Defendants moved to dismiss Plaintiff's amended complaint on March 7, 2012, and were partially successful. However, Plaintiff was given another opportunity to amend her complaint and she did so on November 8, 2012. In her second amended complaint, Plaintiff alleged claims for negligence, breach of warranty, strict liability, fraud, violation of Oregon's Unlawful Trade Practices Act ("UTPA"), OR. REV. STAT. § 646.605, and unjust enrichment. Defendants moved for summary judgment soon thereafter.

On November 14, 2012, Plaintiff's counsel filed a motion to terminate their on-going pro bono representation, which was the Court imposed deadline for the parties to disclose all expert witnesses. Two days later, Defendants moved for summary judgment, arguing, inter alia, that Plaintiff failed to disclose an expert witness to testify as to specific causation. On February 5, 2013, the Court convened a telephone hearing on pro bono counsels' motion to withdraw. Defendants' counsel agreed to the Court conducting a portion of the hearing on a sealed ex parte basis. Plaintiff's counsel voiced concerns regarding continued representation of Plaintiff. The Court was also advised about a lack of funds to retain or depose experts. Ultimately, the motion to withdraw was denied after Plaintiff and her counsel agreed that a variant of the briefing scheme established in *State v. Balfour*, 311 Or. 434

3 - FINDINGS & RECOMMENDATION

(1991), could be employed at the summary judgment stage of this proceeding.

On February 6, 2013, Plaintiff's counsel obtained the expert discovery that occurred during the consolidated MDL pretrial proceedings before Judge Patti Saris in the District of Massachusetts. Two days later, Plaintiff filed a motion to enlarge time to file expert designations pursuant to Rule 6(b). In accordance with prior representations to the Court, Defendants responded to Plaintiff's motion to enlarge in their reply in further support of their motion for summary judgment, which was filed on March 28, 2013.

On May 13, 2013, the Court entered a Findings and Recommendation, in which it recommended that both Plaintiff's motion to enlarge time and Defendants' motion for summary judgment be granted. Essentially, the Court's recommendation on Defendants' motion for summary judgment was based on: (1) Defendants pointing to an absence of evidence to support an essential element of Plaintiff's claims, namely specific causation; and (2) Plaintiff failing to come forward with evidence that would be sufficient to support a jury verdict in her favor. On June 6, 2013, Judge Simon adopted the Findings and Recommendation in its entirety and entered a judgment of dismissal. Two weeks later, Defendants filed their cost bill.

## II. LEGAL STANDARD

Upon order of the Court, the following items may be taxed as costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2008).

Federal Rule of Civil Procedure ("Rule") 54(d) provides that costs "should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). "This rule creates a presumption in favor of awarding costs to the prevailing party; if a district court departs from that presumption, it must provide an explanation so that the appellate court can determine whether the district court abused its discretion." *Birkes v. Tillamook County*, No. 09-CV-1084-AC, 2013 WL 796650, at *1 (D. Or. Mar. 4, 2013). The district court has "wide discretion" in awarding costs under Rule 54(d). *K-S-H Plastics, Inc. v. Carolite, Inc.*, 408 F.2d 54, 60 (9th Cir. 1969).

The Ninth Circuit "has approved the following reasons for refusing to award costs to a prevailing party: the losing party's limited financial resources, and misconduct on the part of the prevailing party." *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 592 (9th Cir. 2000) (en banc) (internal citations omitted); *Birkes*, 2013 WL 796650, *1 (stating that "the court may consider the amount of costs involved" and the "plaintiff's ability to pay the costs, including the possibility that the award may leave the plaintiff indigent.")

5 - FINDINGS & RECOMMENDATION

Similarly, in *Stanley v. University of Southern California*, 178 F.3d 1069 (9th Cir. 1999), the district court awarded costs to the defendants as "prevailing parties" under Rule 54(d)(1), and denied the plaintiff's subsequent motion to re-tax costs. *Id.* at 1079. The Ninth Circuit "conclude[d] that the district court abused its discretion, particularly based on the district court's failure to consider two factors: [the plaintiff]'s indigency, and the chilling effect of imposing such high costs on future civil rights litigants." *Id.*

### III. DISCUSSION

In her response brief, Plaintiff explains that she is unable to seek employment due to mental and physical disabilities. Plaintiff maintains that her mental disabilities are due to her ingestion of Neurontin. She also provides a handwritten itemization of expenses that total approximately $60 more than the $1,233 per month she receives in Social Security benefits. The only exhibits attached to Plaintiff's response brief are (1) a lease agreement indicating that her rent is payable at the rate of $565 per month; (2) an April 11, 2013 medical bill of $161.10 from Alegent Creighton Health; (3) a May 20, 2013 medical bill of $99.50 from Alegent Creighton Clinic; (4) a gas bill of $21.16 for the period April 24, 2013 through May 20, 2013; and (5) a monthly insurance bill of $144.02 for Plaintiff's 2005 Suzuki Reno.

Defendants argue that Plaintiff's submission is insufficient as a matter of law to sustain her burden of affirmatively demonstrating that Defendants are not entitled to costs. As Defendants go on to explain,

6 - FINDINGS & RECOMMENDATION

> [Plaintiff] has merely submitted a brief—'not a declaration under oath'—attaching unauthenticated documentation in an attempt to establish her financial condition.  In this case, a declaration under oath is critical given Plaintiff's history of making unsubstantiated assertions in court filings. . . . There are [also] a number of deficiencies in Plaintiff's submission.  For example, Plaintiff attaches what appears to be two *medical bills*—one in the amount of $99.50 and another in the amount of $161.10.  However, there is no suggestion, much less evidence, that these *or other comparable costs* will be incurred going forward on a monthly basis.  As another example, Plaintiff claims an expense of $50 for 'Apollo Storage' and an expense of $34.89 for 'Renters Insurance,' but does not attach any document to substantiate or explain those expenses.

(Defs.' Resp. Pl.'s Hardship Objection at 3-4) (emphasis added).

The only example Defendants cite in support of their assertion that Plaintiff has a "history of making unsubstantiated assertions in court filings" is *Teater v. City of Oregon City, et al.*, No. 3:05-cv-01546-HU, slip op. at 15 (D. Or. Feb. 9, 2006).  In that case, Judge Mosman denied Plaintiff's motion to proceed in forma pauperis and dismissed the action without prejudice because "[t]he facts alleged in the complaint [we]re irrational, and [he was] unable to discern from the allegations any claim having an arguable basis in law or fact."  *Id.*

The Court does not view Judge Mosman's preliminary screening of Plaintiff's complaint as evidence that she is untrustworthy.  This Court has had occasion to interact with Plaintiff on the record on a few occasions, most recently during the April 24, 2013 hearing on Defendants' motion for summary judgment and the February 5, 2013 hearing on pro bono counsels' motion to withdraw.  On each of these occasions Plaintiff was honest, candid, and forthcoming with the Court.

7 - FINDINGS & RECOMMENDATION

Additionally, there is no doubt in the Court's mind that Plaintiff asserted legitimate claims in this proceeding. It is noteworthy that Pfizer entered into a settlement with the Government regarding Warner-Lambert's illegal off-label marketing of Neurontin, the same conduct that formed the basis of Plaintiff's claims. *See In re Pfizer Inc. Shareholder Derivative Litig.*, 722 F. Supp. 2d 453, 456 (S.D.N.Y. 2010) ("To settle these charges, Pfizer paid a $240 million criminal fine and an additional $190 million penalty.") Plaintiff's case was undone by her inability, potentially due to a lack of financial resources, to retain an expert to testify as to specific causation. There are, however, doctors who believe that "Neurontin is an agent that, . . . in vulnerable people, will lead to changes of mood and behavior; and will lead, in certain cases to suicidal intentions, and suicidal acts, and completed suicides." (Findings & Recommendation on Defs.' Mot. Summ. J. at 8) (quoting expert testimony that occurred during the consolidated proceedings in the District of Massachusetts).[1]

It is true that Plaintiff did not properly authenticate the exhibits attached to her response brief, nor did she submit a sworn declaration subject to the penalty of perjury. However, Plaintiff's procedural errors should not be outcome determinative on the issue of her indigence. Indeed, the Court's appointment of pro bono counsel was predicated on a demonstration of indigence. *See Rayford v. Giurbino*, No. 07-cv-1684, 2008 WL 4997607, at *1 (S.D. Cal. Nov. 24, 2008) ("The district court may appoint pro bono

---

[1] In her second amended complaint, Plaintiff alleged that she suffered similar symptoms after being prescribed Neurontin.

8 - FINDINGS & RECOMMENDATION

counsel for an indigent pro se litigant in a civil appeal pursuant to 28 U.S.C. § 1915(e)(1) in cases presenting exceptional circumstances.") In her motion for appointment of new pro bono counsel, filed on November 19, 2012, Plaintiff maintained that her only income consisted of $1,212 in monthly Social Security benefits.[2]

Moreover, the Court has little doubt Plaintiff has provided a fair and accurate portrayal of her financial situation. Defendants challenge the veracity of Plaintiff's own statements and the fact that Plaintiff's exhibits were not properly authenticated. They do not claim that the exhibits are in fact not authentic, however, and the Court sees no basis to question their authenticity. It would be quite remarkable if Plaintiff, a 57-year-old woman on disability, who is appearing pro se and who submits only handwritten papers to the Court, had the capabilities to alter or manufacture detailed electronic versions of a lease agreement, medical bills, a gas bill, and an insurance statement.

The Court finds that an award of costs against Plaintiff would be unduly burdensome in light of her limited financial resources and her disability.[3] The amount required by Defendant represents a significant financial burden for Plaintiff. For example,

---

[2] It must noted that (1) any deviation in Plaintiff's Social Security benefits is potentially due to a cost-of-living adjustment or an approximation by Plaintiff; and (2) Plaintiff's rent (at the same address) was only $300 per month in November 2012, but her May 2013 lease agreement indicates that it was increased to $565 per month.

[3] In *Johnson v. Gibson*, No. 3:11-cv-432-AC, 2013 WL 1412824 (D. Or. Apr. 8, 2013), Judge Acosta denied a cost bill against a plaintiff whose sole source of income was social security benefits of $1,000 per month. *Id.* at *2.

9 - FINDINGS & RECOMMENDATION

assuming Plaintiff receives $1,233 per month in Social Security benefits and pays out $565 a month for rent and $144 a month for car insurance (i.e., expenses which Defendants do not appear to contest would be incurred on a monthly basis), she is left with only $524 dollars a month to cover any additional insurance, food, clothing, utilities, gasoline, housekeeping supplies, personal care products, maintenance, and medical expenses.[4]  In addition, when you compare Plaintiff's alleged symptoms with the expert testimony that occurred during the consolidated proceedings in the District of Massachusetts, it is evident that Plaintiff had a non-frivolous case.  But neither Plaintiff, nor pro bono counsel had the funds to retain or depose experts.  Under these circumstances, the Court should exercise its discretion and deny an award of costs to Defendants.

As to Defendants' alternative proposal—that the Court should enter a pre-filing order—there is insufficient evidence in the record to support a determination that Plaintiff is a vexatious litigant.  Defendants only cite two cases where Plaintiff's complaints were screened and dismissed by the district court. *See Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (stating that "pre-filing orders are an extreme remedy that should rarely be used," and that "[c]ourts should not enter pre-filing orders with undue haste because such sanctions can tread on a litigant's due process right of access to the courts.")

///

///

---

[4] The Court rejects any notion that a person who receives disability will not incur medical expenses on a consistent basis.

10 - FINDINGS & RECOMMENDATION

**IV. CONCLUSION**

For the reasons stated, I recommend the Court deny Defendants' cost bill (Docket No. 117).

**V. SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due **October 7, 2013.**  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due **October 24, 2013.**  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 17th day of September, 2013.

/s/ Dennis J. Hubel
_____
DENNIS J. HUBEL
United States Magistrate Judge

11 - FINDINGS & RECOMMENDATION